McKinney, J.
delivered the opinion of the court.
This bill was brought by the complainants, for .an account of their estate, which came into the possession of the defendant as their guardian. An account was taken, in which the defendant was charged with the price of a slave sold by him, as the property of his wards, in December, 1839, for $550, with interest thereon; and also, with the sum of $215, money of his wards, received by him and loaned to one James B. Eliger, in 1838, with interest on the same.
*613 Both of the foregoing debts were lost by reason of the failure of the debtors, which happened in April or May, 1842. And the only question in the cause is, whether, under the circumstances, the defendant was properly charged with the loss. We think, he unquestionably was. As regards the price of the slave, it appears, that on the application of the defendant to the Chancery Court at Gallatin, at the October term, 1839, he was empowered, in the character of guardian, to make sale of said slave. The order specified the terms of sale, and required that it should be made on the public square in the town of Gallatin, on a credit of twelve months; that bond and sufficient security should be taken, and that the defendant should make a report of the sale to the next .term of the court. In disobedience to this order of the court, the defendant sold the slave at a place fifteen miles distant from Gallatin, took an obligation with security, payable to himself, individually, and not as guardian; and made no report of sale to the court for a period of two years thereafter, viz, the October term, 1841, when he applied for an order of confirmation. And at the ensuing term, April term, 1842, on the master’s reporting that the sale was for a fair price, and that the purchase money was secured, the chancellor decreed that the sale be confirmed, and the title vested in the purchaser. This entire proceeding was exparte, and at the instance of the defendant. In October, 1844, long after the utter insolvency of the purchaser and his sureties, suit was brought by the defendant upon said obligation in the Circuit Court of Sumner county, and. judgment obtained thereon in February, 1845, which remains uncollected. The proof shows that the purchaser and his sureties were much in debt, and embarrassed in their pecuniary *614 circumstances in tbe years 1840 and 1841; and that they and the defendant resided in the same county. From the foregoing facts, it is manifest, that the price of the slave was lost by the defendant’s reckless disregard of duty and most culpable negligence. If the authority conferred upon him by the court, had been pursued, a judgment might have been obtained against the purchaser and his sureties, at a time when the money could probably have been collected. His failure to obey the order of the court, and his neglect for the period of four years after the purchase money fell due, to take any step for its collection, are unexplained, and necessarily give rise to a strong presumption of wilful violation of duty, upon which alone he would be properly chargeable with the loss. But he is chargeable upon another ground. He took the obligation payable to himself, in his own right, and not as guardian, and thereby exposed the fund to the hazard of being made subject to the claims of his own creditors, and lost to the complainant. This act, standing as it does wholly unexplained, was a conversion of the fund. If a Trustee depos-ite money in a bank and do not guard against his own insolvency by placing it to the credit of the trust estate, and not to his own account, he will be held liable in the event of the failure of the bank. Lev. on Trusts, 300. The money must be paid to the account of the trust estate, and the evidence of the payment or deposit must be taken by the trustee in that character, “by which precaution, should the trustee become bankrupt or insolvent, the money so ear-marked would be specific assets to the credit of the trust. If the trustee so manage the transaction that, in case of his own failure, the general creditors and not the trust estate would have the benefit, then if the bank break or the bills be dishonored, the trustee will *615 be held responsible for the loss to the cestui que trust,” Id. S24; 11 Ves. 380-1; 1 Jac. and Walk. 247. _ “An Executor is considered to employ the money in trade, if he lodge it at his banker’s and place it in his own name.” 1 B. C. C. 384; 11 Ves. 61. The principle of the foregoing authorities applies fully to this case.
In respect to the sum of money loaned by the defendant, it appears from the proof that upon the last renewal the note was likewise made payable to himself, in his own right; and although he may have been ignorant at the time that it was so executed, as is alleged, yet, upon ascertaining the fact to be so, it does not appear that he attempted, or expressed any desire, to have it put right, as it was his duty to have done. And, in addition to this, the proof further shows that this money was loaned to Eliger, upon an agreement that he should pay the defendant ten per cent, interest for the use thereof; and that he received at this rate of interest for some years, upon said sum, although in his settlement with the County Court, he seems to have only accounted for the legal interest. This was a two-fold violation of law and fiduciary obligation on the part of the defendant, in receiving usurious interest, and in dealing with the trust fund for individual gain: and upon this ground, alone, he was properly charged with the loss. Such illegal and highly censurable management of a trust fund, is incompatible with its safety, and will be regarded as evidence of a willingness on the part of the trustee to expose it to hazard, for the sake of deriving forbidden profit to himself.
The decree of the chancellor will be affirmed with costs.